ACCEPTED
07-15-00004-cv
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
5/1/2015 10:03:30 PM
Vivian Long, Clerk

# CAUSE NO. 07-15-00004-CV

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

5/1/2015 10:03:30 PM

VIVIAN LONG
CLERK

## IN THE COURT OF APPEALS
## SEVENTH DISTRICT OF TEXAS
## AT AMARILLO

**ROBBYN ELIZABETH COY ARRIOLA,
JOEY ARRIOLA, JACK HENRY LAWSON,
and RAVEN JONAE PRITCHETT,**

**Appellants**

**v.**

**TOMMY KUTSCHEROUSKY, SR., ET AL.,
d/b/a KUTSCHEROUSKY FARMS,**

**Appellee**

*Appealed from the 87th Judicial District, Tarrant County
Cause No. 30,122-B, the Honorable Patrick Simmons, Judge the 77th Judicial
District Court, sitting as Judge of the 87th Judicial District Court*

## APPELLANTS' BRIEF

THOMAS M. MICHEL
State Bar No. 14009480
GRIFFITH, JAY & MICHEL, LLP
2200 Forest Park Blvd.
Fort Worth, Texas 76110
(817) 926-2500 (Telephone)
(817) 926-2505 (Facsimile)
thomasm@lawgjm.com
ATTORNEYS FOR APPELLANTS

## ORAL ARGUMENT REQUESTED

## **IDENTITY OF PARTIES AND COUNSEL**

Appellant submits the following list of names and address of all parties and counsel pursuant to Tex. R. App. P. 38.1 (a):

| | | |
|---|---|---|
| 1. | Robbyn Elizabeth Coy Arriola, Joey Arriola, Jack Henry Lawson, and Raven Jonae Pritchett | Appellants |
| 2. | Rodney Pat Ramsey<br>201 East Main Street, Suite 203<br>Waxahachie, Texas 75165 | Trial counsel for Appellant |
| 3. | Thomas M. Michel<br>Griffith, Jay & Michel, LLP<br>2200 Forest Park Blvd.<br>Fort Worth, Texas 76110<br>(817) 926-2500 (Telephone)<br>(817) 926-2505 (Facsimile) | Appellate counsel for Appellant |
| 4. | Tommy Kutscherousky, Sr., et al.,<br>d/b/a Kutscherousky Farms | Appellee |
| 5. | James Showers<br>Martin, Showers, Smith & McDonald<br>P.O. Box 257<br>Hillsboro, TX 76645<br>(254) 582-2536 | Trial counsel for Appellee |
| 6. | Greg White<br>4300 West Waco Drive, Suite B2-293<br>Waco, Texas 76710<br>(254) 307-0097<br>(866) 521-5569 | Appellate counsel for Appellee |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .......................................................... i

TABLE OF CONTENTS ................................................................................ ii

INDEX OF AUTHORITIES ............................................................................ v

STATEMENT OF THE CASE .......................................................................... x

ISSUES PRESENTED ................................................................................... xi

STATEMENT OF FACTS ............................................................................... 1

    I.    The Lawson Farm and the three siblings inherit the Farm. .......................... 1

    II.   Robbyn's decision to lease the property, and the introduction to Eric Kutscherousky by a mutual friend. ................................................................ 2

    III.   The May 26, 2011 one sentence document. ................................................ 3

    IV.   The July 6, 2011 Lease Agreement. ........................................................... 4

        A.    Robbyn wanted some very specific provisions in the Lease and was not an ordinary farm lessor. ......................................................... 6

           1. No hunting of any kind was allowed on the Farm. .................................. 6

           2. Specific people were prohibited from being on the Farm. ......................... 7

           3. Tommy Jr. "kills [hogs] whenever he can, and Eric is a competition winning hog hunter. .............................................................................. 7

           4. Rent was required for 2011. .................................................................. 7

           5. Lessee was required to maintain the fences. ............................................ 8

           6. The Lease was for a five year term. ....................................................... 8

           7. The Lease provided for automatic termination for violating the terms. ................................................................................................ 9

8. The Lease was given at a lower rate to clean up the farm. ........................9

V. The Kutscherouskys admitted that they placed traps, put corn in traps to lure and capture the hogs, and did not pay rent for 2011 ................................9

VI. The Kutscherouskys hunt on the farm, do not pay rent, and do not maintain the fences as required by the Lease..............................................10

VII. Robbyn decides to sell the Farm because the Lease did not work out and would not be fair to her siblings. ........................................................10

   A. Robbyn and the siblings agree to let the Farm go. .....................................10

   B. All parties agreed the Lease would still go with the Farm if it were sold. ........................................................................................................11

VIII. After termination, Tommy Kutscherousky executed an affidavit under oath swearing the Lease was a five year lease and that rent was due for the year 2011 and files it in the Limestone County Deed records. .............11

   A. After the Notice of Termination, the parties unsuccessfully attempted to negotiate the purchase and a sale of the Farm. ...................12

IX. Raven and Jack had no involvement in the Lease Agreement.....................12

X. The case proceeded to trial and the Kutscherouskys obtain a judgment against the Appellees so large that it basically awards them a large portion of the value of Lawson Farm. .......................................................13

SUMMARY OF ARGUMENT ................................................................................14

ARGUMENT ..........................................................................................................16

I. The jury's verdict fails to find what the agreement between the parties was and therefore does not support the trial court's judgment. ..................16

II. The trial court erred in entering judgment against Raven and Jack............17

   A. There is no evidence or insufficient evidence to support the jury's finding that Joey or Robbyn had authority or apparent authority from Raven and Jack to lease the Farm to Eric.........................................19

iii

B.     There is no evidence to support the jury's finding that Pritchett and Lawson ratified the lease, either................................................22

III.   The July 6, 2011 Lease constitutes the entire agreement between the parties as a matter of law because the parol evidence rule precludes the consideration of the May 26, 2011 document and any prior oral agreement. ...........................................................................23

IV.   The Kutscherouskys breached the lease as a matter of law. ........................30

    A.     Standard of Review. ...............................................30

    B.     The evidence conclusively established that the Kutscherouskys breached the lease by trapping feral hogs. ..............................31

       i. It is undisputed that the Kutscherouskys engaged in trapping feral hogs, which constitutes "hunting."..........................................31

       ii. The trial court erred in refusing to instruct the jury as to the definition of "hunting." ........................................36

    C.     It is undisputed that the Kutscherouskys failed to pay rent. ....................38

    D.     The Kutscherouskys failed to maintain the fence line as required by the Lease................................................39

V.   The evidence is insufficient to show that the Appellants breached the lease. ...........................................................................40

    A.     Standard of Review. ...............................................40

    B.     The Arriolas did not breach the lease by terminating it...........................41

PRAYER ....................................................................43

CERTIFICATE OF SERVICE ...............................................44

CERTIFICATE OF COMPLIANCE ........................................44

APPENDIX ..................................................................45

# INDEX OF AUTHORITIES

**Cases**

*Allegiance Hillview, L.P. v. Range Texas Production LLC*,
   347 S.W.3d 855 (Tex. App.—Fort Worth 2011, no pet.)....................... 18, 19, 40

*Bockelmann v. Marynick,*
   788 S.W.2d 569 (Tex. 1990)...............................................................20

*Cameron County v. Velasquez,*
   668 S.W.2d 776 (Tex. App. – Corpus Christi 1984, writ ref'd n.r.e.)................16

*Cent. Ready Mix Concrete Co. v. Islas*,
   228 S.W.3d 649 (Tex. 2007)..............................................................18

*Chastain v. Cooper & Reed,*
   152 S.W.2d 422 (Tex. 1953)..............................................................21

*City of Keller v. Wilson,*
   168 S.W.3d 802 (Tex. 2005).............................................................31

*City of The Colony v. N. Tex. Mun. Water Dist.,*
   272 S.W.3d 699 (Tex. App. – Fort Worth 2008, pet. denied)...........................22

*DeClaire v. G & B McIntosh Family Limited Partnership*,
   260 S.W.3d 34 (Tex.App.—Houston [1st Dist.] 2008, no pet.).........................25

*Dow Chemicals v. Francis,*
   46 S.W.3d 237 (Tex. 2001)................................................................ 30, 31

*Dyer v. Cotton,*
   333 S.W.3d 703 (Tex. App.—Houston [1st Dist.] 2010, no pet.)......................20

*Edascio, L.L.C. v. NextiraOne L.L.C.*,
   264 S.W.3d 786 (Tex.App—Houston [1st Dist.] 2008, pet. filed).....................24

*First Valley Bank of Los Fresnos v. Martin,*
   144 S.W.3d 466 (Tex. 2004)..............................................................21

*Gaines v. Kelly,*
    235 S.W.3d 179 (Tex. 2007)............................................................... 20, 21

*Garner v. Fidelity Bank, N.A.,*
    244 S.W.3d 855 (Tex.App.—Dallas 2008, no pet.) .............................................25

*Gary E. Patterson & Associates, P.C. v. Holub,*
    264 S.W.3d 180 (Tex.App.—Houston [1st Dist.] 2008, pet. denied) .......... 25, 28

*Hancock v. Variyam,*
    2013 WL 2150468 (Tex. 2013) .......................................................................19

*Hester Int'l Corp. v. Fed. Republic of Nig.,*
    879 F.2d 170 (5th Cir. 1989) ...........................................................................20

*Horlock v. Horlock,*
    614 S.W.2d 478 (Tex. Civ. App. – Houston [14th Dist.] 1981,
    writ ref'd n.r.e.) ..............................................................................................20

*Hubacek v. Ennis State Bank,*
    159 Tex. 166. 317 S.W.2d 30 (1958)................................................................25

*In re Green Tree Servicing LLC,*
    275 S.W.3d 592 (Tex. App. – Texarkana 2008, no pet.)....................................29

*In re Lyon Financial Services, Inc.,*
    257 S.W.3d 228 (Tex. 2008)............................................................................29

*ISG State Operations, Inc. v. National Heritage Insurance Company,*
    234 S.W.3d 711 (Tex.App.—Eastland 2007, pet. denied) .................................24

*Kindred v. Con/Chem, Inc.,*
    650 S.W.2d 61 (Tex. 1983)..............................................................................19

*Lenape Resources Corp. v. Tennessee Gas Pipeline Co.,*
    925 S.W.2d 565 (Tex. 1996)............................................................................23

*Magee v. Hambleton,*
    No. 2-08-441-CV, 2009 Tex. App. LEXIS 6778
    (Tex. App. – Fort Worth August 25, 2009, pet. denied)....................................23

*Miller v. Kennedy & Minshew, Prof'l. Corp.,*
142 S.W.3d 325 (Tex. App. – Fort Worth 2003, pet. denied) ............................22

*Minyard Food Stores v. Goodman,*
80 S.W.3d 573 (Tex. 2002)................................................................................30

*Morgan Buildings and Spas, Inc. v. Humane Society of Southeast Texas,*
249 S.W.2d 480 (Tex.App.—Beaumont 2008. no pet.) ....................................26

*Nations Bank, N.A. v. Dilling,*
922 S.W.2d 950 (Tex. 1996)..............................................................................20

*Pinehurst v. Spooner Addition Water Co.,*
432 S.W.2d 515 (Tex. 1968)..............................................................................24

*Plas-Tex, Inc. v. U.S. Steel Corp.,*
772 S.W.2d 442 (Tex. 1989)..............................................................................31

*Puckett v. U.S. Fire Ins. Co.,*
678 S.W.2d 936 (Tex. 1984)..............................................................................31

*Rao v. Rodriguez,*
923 S.W.2d 176 (Tex. App. – Beaumont 1996, no pet.) ...................................16

*Rourke v. Garza,*
530 S.W.2d 794 (Tex. 1975)..............................................................................20

*Shrieve v. Tex. Parks & Wildlife Dept.,*
No. 03-04-00640-CV, 2005 Tex. App. LEXIS 3406
(Tex. App. – Austin May 5, 2005, no pet.).........................................................34

*Southwestern Bell Co. v. Wilson,*
768 S.W.2d 755 (Tex. App.—Corpus Christi 1988, no pet.) ............................18

*Star Enterprise v. Marze,*
61 S.W.3d 449 (Tex. App.—San Antonio 2001, pet. denied)................ 19, 40, 41

*Sterner v. Marathon Oil Co.,*
767 S.W.2d 686 (Tex. 1989)..............................................................................30

*T.O. Stanley Boot Co. v. Bank of El Paso,*
847 S.W.2d 218 (Tex. 1992)............................................................................16

*Tawes v. Barnes,*
340 S.w.3d 419 (Tex. 2011)............................................................................32

*Texas Pacific Coal & Oil Co. v. Smith,*
130 S.W.2d 425 (Tex. Civ. App. – Eastland 139, writ dism'd, judgm't cor.) ....23

*Thota v. Young,*
366 S.W.3d 678 (Tex. 2012)............................................................................36

*Union Pac. R.R. Co. v. Williams,*
85 S.W.3d 162 (Tex. 2002)..............................................................................37

*Uniroyal Goodrich Tire Co. v. Martinez,*
977 S.W.3d 328 (Tex. 1998).............................................................................18

*Valence Operating Co. v. Dorsett,*
164 S.W.3d 656 (Tex. 2005)............................................................................32

*Verizon Corporate Services Corp. v. Kan-Pak Systems, Inc.,*
290 S.W.3d 899 (Tex. App. – Amarillo 2009, no pet.) ......................................17

*Willson v. Superior Oil Co.,*
274 S.W.2d 947 (Tex. App. – Texarkana 1954, no writ) ...................................22

*Wilson v. Wagner,*
211 S.W.2d 241 (Tex. Civ. App. – San Antonio 1948, writ ref'd n.r.e.) ...........26

*Winegar v. Martin*,
304 S.W.3d 661 (Tex. App.—Fort Worth 2010, no pet.)....................................19

**Statutes**

Alaska Stat. §16.05.940 (21).............................................................................32
*Conn. Gen. Stat. Ann.* § 26-1. (12)...................................................................32
*Ga. Code Ann.* § 27-1-2. (39) ..........................................................................32
*Iowa Code Ann.* 481A.1 (32 ............................................................................33
*Ky. Rev. Stat. Ann.* § 150.010 (12)..................................................................33

*La. Rev. Stat. Ann.* § 56:116.1.................................................................................33
*Me. Rev. Stat. Ann. Tit. 12,* § 7001 ........................................................................33
*Mont. Code. Ann.* § 87-2-101 ((8)...........................................................................33
*Neb. Rev. Stat.* § 37-232...........................................................................................33
*Ohio Rev. Code Ann.* § 1531.01...............................................................................33
*Pa. Consol. Stat. Ann.* § 102 ...................................................................................33
TEX. BUS. & COMM. CODE § 26.01(a)(5) .............................................................28
TEX. GOVT. CODE § 312.002....................................................................................32
TEX. PARKS & WILD. CODE § 1.101(1)..................................................................32
TEX. PARKS & WILD. CODE § 1.101(5)..................................................................32
*Wash. Rev. Code Ann.* § 77.08.010 (7) ...................................................................33

**Other Authorities**

Jared Timmons, *Feral Hog Laws and Regulations in Texas,* AgriLIFE
    Extension, Texas A&M System feralhogs.tamu.edu/files/2011/08/
    Feral-Hog-Laws-and-Regulations-in-Texas.pdf (April 30, 2015) ......................34

Wikipedia, *Hunting*, http://en.wikipedia/wiki/Hunting ...........................................34

**Rules**

TEX. R. CIV. P. 278 ..................................................................................................36
TEX. R. CIV. P. 279 ..................................................................................................16

## STATEMENT OF THE CASE

**1. Nature of the proceedings:**

This was a lawsuit over a breach of a farm lease.[1]

**2. Course of the proceedings:**

The case came on for jury trial on October 13-15, 2014.[2]

**3. Trial court's disposition:**

On October 31, 2014, the trial court entered a money judgment in favor of the Plaintiff and against the Defendants.[3]

---

[1] CR 7-31.
[2] RR 1-7.
[3] CR 679.

# ISSUES PRESENTED

1. Whether the jury's verdict supports the judgment that the Appellants breached the lease because the jury failed to determine the essential terms of the agreement?

2. Whether the jury's finding that the Arriolas had authority or apparent authority to bind Jack and Raven to the lease is supported legally or factually sufficient evidence where Jack and Raven did not even know about the lease?

3. Whether the jury's finding that Jack and Raven ratified the lease is supported by legally or factually sufficient evidence where Jack and Raven did not know about the Lease and were not parties to the Lease?

4. Whether the parol evidence rule precludes consideration of the May 26, 2011 document and the alleged oral agreement regarding rent for 2011?

5. Whether the Kutscherouskys breached the lease by trapping feral hogs when the lease expressly prohibits "hunting of any kind?"

6. Whether the Kutscherouskys breached the lease by failing to pay rent?

7. Whether the Kutscherouskys breached the lease by failing to maintain the fence line as required by the lease?

8. Whether the Appellants breached the lease by terminating it as a result of the Kutscherouskys hunting on the lease property, failure to pay rent, and failure to maintain the fence line?

**STATEMENT OF FACTS**

## I.     The Lawson Farm and the three siblings inherit the Farm.

Henry Lawson owned a 205 acre farm in Limestone County.[4]  When he passed away, his son, Larry Lawson, moved to the Farm.[5]  In 2009, when Larry passed away, he left the farm to his three children, Robbyn Arriola, Raven Pritchett and Jack Lawson.[6]

After their father passed away, the three children were not certain what to do with the property.[7] At first, they all had sentimental attachment to the property but knew that logically it may have to be sold and move on.[8] They knew it was not going to work if no one was living down there.[9]

So they decided that Robbyn would move to the farm.  Robbyn was the one who had the "greatest passion for animals," most love of animals, and was interested in farm life.[10]

In 2009, Robbyn moved to the Farm. She was there to take care of the animals and for the sentimental reason that her father loved the farm.[11] Later Joey,

---

[4] P's Ex. 1.
[5] 3 RR 176-179.
[6] Robbyn was not Larry's biological child, but he raised her since she was of 18 months of age. 4 RR 20-21; P's Ex. 4, pgs. 40-45.
[7] 4 RR 75.
[8] 4 RR 75.
[9] 4 RR 75.
[10] 4 RR 28; 4 RR 179
[11] 4 RR 48.

1

her husband, joined her. Joey had known Robbyn her whole life.[12] Later, Robbyn became pregnant and could not help out as much. Their son was born on November 16, 2011.[13]

Robbyn enjoyed their many animals on the Farm. They had horses, donkeys, ducks, turkeys, dogs, chickens, and goats.[14] Robbyn was concerned about the fences because the animals could get out, or they could get trapped.[15]

## II. Robbyn's decision to lease the property, and the introduction to Eric Kutscherousky by a mutual friend.

Robbyn and Joey were introduced to Eric Kutscherousky by a mutual friend for possibly leasing the form.[16] When Robbyn decided to lease the property, she knew she would not be the "traditional" farm lessor. She explained to Eric that she was interested in farming and wanted to learn. She also thought her interest in leasing to be more "emotional."[17]

Eric said the he would be more than happy to tell Robbyn what he was planting and the processes of farming and things of that nature.[18] Joey told Eric that Robbyn liked to walk the farm.[19]

---

[12] 4 RR 129.
[13] 4 RR 130.
[14] 4 RR 120; 3 RR 213.
[15] 4 RR 228-229.
[16] 3 RR 228.
[17] 4 RR 180.
[18] 4 RR 180
[19] 3 RR 245.

## III.    The May 26, 2011 one sentence document.

On May 26, 2011 Eric and Joey signed a one sentence document that provided as follows:

> May 26, 2011
>
> Tommy Kutscherousky Sr., Tommy Kutscherousky Jr. and Eric Kutscherousky has my farm #4888, leased from January 1, 2011 to December 31, 2016.
> Joey and Robbyn Arriola[20]

It is undisputed that this document was only signed by Joey Arriola, who had no ownership interest in the Farm. It was not signed by Eric. It was not singed by Robbyn.  At trial, Tommy admitted that the May 26, 2011 Lease did not say how many acres were leased, did not say how much per acre, and did not include the other terms and conditions that were agreed to by Eric.[21]  Eric asserted that Robbyn and Joey owned the farm.[22]

Apparently on the same day, Eric Jr. then took this document to the FSA who advised him that the FSA wanted to know if it was a "cash lease" or a "share crop" agreement.[23]

Tommy then returned to Joey who modified the document to include the word "cash" in front of the word lease, so the document now read as follows:

---

[20] P's Ex. 2.
[21] 3 RR 92-93.
[22] 3 RR 228.
[23] 3 RR 247.

3

May 26, 2011

> Tommy Kutscherousky Sr., Tommy Kutscherousky Jr. and Eric Kutscherousky has my farm #4888, leased from January 1, 2011 to December 31, 2016.
> Joey and Robbyn Arriola[24]

Once again, it is undisputed that only Joey signed this document. This time, though, he signed it as "Joey & Robbyn Arriola."[25]

The May 26, 2011 document did not mention that the Kutscherouskys got seven months free rent.[26] In fact, there is no written document that says they do not have to pay rent.[27] Further, the May 26, 2011 document has no terms to it all.[28] It did not state the number of acres to be leased; it did not state price per acre.[29]

## IV. The July 6, 2011 Lease Agreement.

On July 6, 201l, Eric, Joey and Robbyn signed the one page Lease Agreement.[30] It was undisputed at trial by Kutscherousky that Eric had the authority to sign the Lease Agreement on behalf of his father, Tommy Sr. and his brother Tommy, Jr.

---

[24] P's Ex. 2.
[25] 7 RR; P's Ex. 2
[26] 7 RR; P's 2.
[27] 3 RR 282.
[28] 3 RR 283-284; P's Ex. 2.
[29] P's Ex. 2.
[30] P's Ex. 6.

Eric admitted at trial that he read the Lease Agreement before he signed it.[31] Eric admitted that the May 26, 2011 document is not attached to or referenced in the July 6, 2011 Lease Agreement.[32] Eric admitted that he had read the whole Lease Agreement when he signed it.[33] Eric admitted at trial that he believes it is important to read a lease contract he was signing.[34] When Eric took the Lease Agreement he could have looked at it every day.[35] He agrees if the fence line was bad, he should have fixed it.[36] Eric admitted at trial the Lease Agreement did not provide that oral agreements are part of the Lease.[37]

Eric admitted at trial that the Arriolas provided him a copy of the Lease Agreement, and offered the opportunity to read it and sign it, that he agreed to it, and signed it.[38] Eric testified that the jury should just ignore the fact that he signed the Lease Agreement to pay rent for 2011 even though he signed the agreement.[39]

Eric testified that he did not want the jury to believe parts of the Lease Agreement that are not good for his case.[40] Tommy Jr. testified that Eric signed

---

[31] 3 RR 286
[32] 3 RR 291
[33] 3 RR 289.
[34] 3 RR 287.
[35] Id.
[36] 3 RR 288
[37] 3 RR 291.
[38] 3 RR 296.
[39] 3 RR 297
[40] 3 RR 295.

the Lease Agreement on behalf of Tommy Sr., Tommy Jr., Eric, and Kutscherousky Farms.[41]

## A. Robbyn wanted some very specific provisions in the Lease and was not an ordinary farm lessor.

### 1. No hunting of any kind was allowed on the Farm.

As mentioned above, of the three children, Robbyn was the one who most liked animals and had sentimental feelings with regard to the Farm. Eric knew Robbyn liked to walk the Farm and did not want there to be any hunting.[42] Eric had specifically discussed with Joey that "Lessee agrees that there will be no hunting of any kind on the property."[43] Eric agreed.[44]

Robbyn had made this as a special request.[45] Robbyn did not want hunting of any kind. She did not want traps on her property because of her many other animals on the farms that might get caught in the traps, as well as migratory deer.[46] Robbyn also liked to walk the farm.[47] If the fences had been maintained, this may not have been such a big issue, but Eric never fixed the fences.[48]

Mr. Erskin, a neighbor, would shoot or troop feral hogs.[49]

---

[41] 3 RR 95.
[42] 3 RR 245; 4 RR 95.
[43] 3 RR 245.
[44] 3 RR 245.
[45] 4 RR 95.
[46] 4 RR 228-229.
[47] 3 RR 245.
[48] 4 RR 184-186; D's Ex. 10.
[49] 3 RR 200.

6

## 2. Specific people were prohibited from being on the Farm.

Robbyn had specifically requested that three people not be permitted on the property: 1) Bill (Clyde) Woodard, Carl Erskin, and Joy Erskin.

Carl Erskin shot and killed Robbyn's dog and had tried to run Robbyn off the road when she was walking.[50] As such, Robbyn did not want Mr. Erskin or his wife on the Farm.

Robbyn did not want Mr. Woodard on the property because she felt that he had made unwanted advances on Robbyn.[51]

## 3. Tommy Jr. "kills [hogs] whenever he can, and Eric is a competition winning hog hunter.

Tommy testified at trial that he tries to kill as many hogs as he can.[52] His brother Eric is a competition winning hog hunter and kills hogs.[53]

## 4. Rent was required for 2011.

As with any lease, the lessee was required to pay rent. The rent was for each year of the 5 year lease, starting 2011 and ending in 2015.

Tommy Jr. testified at trial that he cannot pick and choose the provisions of the July 2011 Lease he will follow.[54] Tommy agreed the July 2011 Lease

---

[50] 3 RR 202-206
[51] 3 RR 216
[52] 2 RR 77-78; 3 RR 74.
[53] 3 RR 273-278; 4 RR 98-99
[54] 3 RR 96.

Agreement required rent to be paid for 2011.[55] He also testified that the July 2011 Lease Agreement required rent to be paid, or if Eric disagreed, he should not have signed it. Tommy further admitted that he was obligated to pay rent for 2011 "Due to that contract, yes."[56] Finally, Tommy conceded:

> Q.   But as that contract was written, [Eric] either should have not signed it, or they should have paid rent for 2011. Is that correct?
>
> A.   Yes.

### 5.   Lessee was required to maintain the fences.

The fences were in poor shape and Eric agreed that he would maintain the fences.[57]

### 6.   The Lease was for a five year term.

The Lease Agreement specifically provided that it was for a five year term.[58]

The May 26, 2011 document provided that there would be a lease for six years. Joey testified that was a mistake because the Lease was supposed to be for five years. So they corrected it to make the Lease a five year lease which Eric signed and agreed to.[59]

---

[55] 3 RR 97.
[56] 3 RR 97.
[57] 3 RR 147-148; 298.
[58] P's Ex. 6.
[59] 4 RR 114; 3 RR286-292.

**7.** **The Lease provided for automatic termination for violating the terms.**

The Lease provided:

> It shall be agreed upon by signature below that all terms listed above shall be adhered to throughout the terms of this contract, failure to follow these terms will result in automatic termination of this contract, (with a 30 day notice of termination), without any refund of monies previously paid to date.[60]

**8.** **The Lease was given at a lower rate to clean up the farm.**

At trial, Tommy Jr. admitted they got a reduced rate to do clean up.[61]

Tommy, Jr. testified that not only were they getting a reduced rate, but free rent.[62]

But this free rent was not in writing and not in the signed Lease Agreement.

**V.** **The Kutscherouskys admitted that they placed traps, put corn in traps to lure and capture the hogs, and did not pay rent for 2011**

The Kutscherousky admitted that they placed traps, and put corn in traps to lure the hogs and capture the hogs.[63]

Robbyn found out that the Kutscherouskys had placed traps on the property when she was walking the Farm with her husband's son.[64] She found the traps with

---

[60] P's Ex. 6.
[61] 3 RR 281.
[62] 3 RR 281.
[63] 3 RR 278; 270-71.
[64] 4 RR 97; 4 RR 221.

corn in them.[65] Joey had advised Eric that the traps were a violation of the Lease Agreement.[66]

## VI. The Kutscherouskys hunt on the farm, do not pay rent, and do not maintain the fences as required by the Lease.

At trial, the Kutscherouskys admitted that they did not pay rent for 2011. They admitted that they placed traps with corn, and trapped hogs. Finally, the jury heard evidence that the Kutscherouskys failed to maintain the fences. As such, on January 11, 2013, Joey and Robbyn sent a Notice of Termination.[67]

On March 8, 2013, well after 30 days, they gave the Kutscherouskys Notice to Vacate.[68]

## VII. Robbyn decides to sell the Farm because the Lease did not work out and would not be fair to her siblings.

### A. Robbyn and the siblings agree to let the Farm go.

Robbyn decided to sell the Farm because the Lease did not work out and would not be fair to her siblings.[69] Although torn, Robbyn decided that it was time to let the sentiments go and to be realistic about the Farm that could be a tangible asset for all them and then the siblings could be going on their own way.[70]

---

[65] 4 RR 221.
[66] 4 RR 223.
[67] P's Ex. 14.
[68] P's Ex. 19.
[69] 4 RR 234-235.
[70] 4 RR 235.

Raven also agreed that it may be time to stop holding onto the Farm for sentimental reasons and Jack agreed.[71]

**B.     All parties agreed the Lease would still go with the Farm if it were sold.**

At trial, all parties agreed that if the Farm was sold, the lease would go with the Farm to the new purchaser.[72]

**VIII. After termination, Tommy Kutscherousky executed an affidavit under oath swearing the Lease was a five year lease and that rent was due for the year 2011 and files it in the Limestone County Deed records.**

On February 16th, 2013, after the Kutscherousky Lease had been terminated, Tommy Kutscherousky executed an **<u>AFFIDAVIT AS TO LEASE OF REAL PROPERTY</u>** under oath, swearing the Lease was a five year lease and that rent was owed for the year 2011 (emphasis original).  He specifically attached the July 6, 2011 Lease Agreement that provided that rent was due for 2011 and that the lease was a five year lease.  He also filed the Affidavit with the Limestone County deed records. Specifically, the Affidavit provided, in relevant part, as follows:

Lease:  That certain five (5) year Lease Agreement from January 1, 2011 through December 31, 2015 reduced to writing in three documents dated May 26, 2011 and July 6, 2011, attached hereto, marked Exhibit A, and made a part hereof for all purposes.

Affiant on oath swears that the following statements are true:

---

[71] 4 RR 34, 38, 46, 75.
[72] 3 RR 266; 3 RR 289; 3 RR 60.

11

1. That Lessor leased to Lessee effective January 1, 2011, the Property, for a term of five (5) years in accordance with the lease documents attached hereto, marked Exhibit A, and made a part hereof for all purposes.[73]

Tommy specifically referenced and attached the July 6, 2011 Lease Agreement to his Affidavit as well as other documents.

### A. After the Notice of Termination, the parties unsuccessfully attempted to negotiate the purchase and a sale of the Farm.

After the Notice of Termination, the parties attempted to negotiate a buyout of the Farm, but could not reach an agreement.[74] In fact, Robbyn and Joey offered to pay the Kutscherouskys the $16,800 they claimed they incurred in clearing the land, but they refused.[75]

### IX. Raven and Jack had no involvement in the Lease Agreement.

Interestingly, during their case in chief, the Kutscherouskys put on no evidence of Raven or Jack's liability on the Lease Agreement, other than they inherited their ownership interest from their father after he passed away.[76]

The record below is undisputed that neither Raven nor Jack were parties to the Lease Agreement.[77] It was undisputed that Raven and Jack did not know about the Lease Agreement.[78] It was undisputed that Raven and Jack did to give Robbyn

---

[73] P's Ex. 17.
[74] 3 RR 54; 4 RR 204, 201.
[75] 4 RR 242.
[76] P's Ex. 4, pgs. 40-45.
[77] P's Ex. 6.
[78] 4 RR 10, 11, 12, 13, 17, 19, 44, 45, 63, 64, 65, 67, 68

12

and Joey authority to bind them to a lease agreement.[79] It was undisputed that neither Robbyn nor Jack received any payment from the lease.[80] It is undisputed that none of the Kutscherouskys met or spoke to either Raven or Jack.

**X.     The case proceeded to trial and the Kutscherouskys obtain a judgment against the Appellees so large that it basically awards them a large portion of the value of Lawson Farm.**

The case proceeded to trial on October 13-15, 2014.  At the conclusion of the jury trial, the Kutscherouskys prevail on the jury questions that were submitted to the jury.  A total of 15 questions were submitted.  Although there were disputes regarding the terms of the Lease, no jury questions were submitted as to the disputed lease terms, except whether the lease term included the year 2016.

On October 31, 2014, the trial court entered a Final Judgment in favor of the Kutscherouskys in the total amount of $262,113, which is a large portion of the entire value of Lawson Farm.[81]

This appeal follows.

---

[79] Id.
[80] Id.
[81] P's Ex. 15.

# SUMMARY OF ARGUMENT

Texans take pride in their ability to hunt, and the Kutscherouskys are no exception to that rule. The Kutscherouskys are self-professed champions at hunting feral hogs, and took advantage of the farm property they leased from the Arriolas to lay traps to lure and capture feral hogs despite the fact that the lease expressly prohibited hunting *of any kind*.

Hunting in Texas, as recognized by the Texas Parks and Wildlife Code, naturally encompasses a variety of methods used to capture a wide array of animals, specifically including trapping. Even common reference tools such as Wikipedia and other states define hunting as including any means that captures or kills animals.

This case centers upon an agreement to lease the Lawson family farm to the Kutscherouskys for farming. When Robbyn Arriola was considering leasing her family's farm to Eric Kutscherousky in 2011, she required that the lease contain a provision that "no hunting of any kind" will be allowed on the farm. Robbyn liked to walk the farm and had a number of animals including horses, chickens, ducks, and donkeys. Robbyn did not want hunting of any kind to protect her own animals as well as the migratory deer that pass through. Robbyn knew that the farm's fence was old and needed to be repaired to protect both animals from getting out but also from keeping other animals from getting onto the farm. Finally, Robbyn gave Eric

Kutscherousky a reduced rental rate to clear the farm for farming, but specifically required in writing that they pay rent for 2011 through 2015, the five year term of the lease.

In short, Eric Kutscherousky breached almost every component of the lease. First, the Kutscherouskys testified at trial that they did not pay rent for 2011 despite the Lease Agreement's specific requirement that they pay rent. Second, it was undisputed at trial that the Kutscherouskys placed traps stocked with corn to lure hogs into them and trapped hogs, all in violation of the specific prohibition that there was to be no hunting of any kind on the farm. Finally, the Kutscherouskys failed to maintain the fences.

On appeal, Appellants contend that the Appellees breached the Lease Agreement as a matter of law and should reverse and render judgment against the Appellees.

To make matters worse, the jury made findings that Robbyn's siblings, Jack and Raven, authorized or ratified the lease. The record is undisputed that Jack and Raven were not parties to the Lease Agreement and did not know about the Lease Agreement and did not receive any payment on the Lease. Simply being a co-tenant does not make you liable for a lease signed by another co-tenant.

## ARGUMENT

**I.  The jury's verdict fails to find what the agreement between the parties was and therefore does not support the trial court's judgment.**

"It is the duty of the one who has the burden of proof on a ground of recovery or defense to see that all essential elements of his cause of action are submitted to the jury, or the ground of recovery is waived." *Rao v. Rodriguez,* 923 S.W.2d 176, 180 (Tex. App. – Beaumont 1996, no pet.), *citing* TEX. R. CIV. P. 279, *Cameron County v. Velasquez,* 668 S.W.2d 776, 781 (Tex. App. – Corpus Christi 1984, writ ref'd n.r.e.).

To be enforceable, a contract must be reasonably definite and certain. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992). Failure to agree on or include an essential term renders a contract unenforceable. *Id.* Texas Pattern Jury Charge 101.1 submits the question of existence of an agreement and the essential terms to the jury. The comments to PJC 101.1 provide, "The court should include in PJC 101.1 all disputed terms essential to create an enforceable agreement. A disputed nonessential term should also be included if it is the basis of the plaintiff's claim for damages."

The Kutscherouskys obtained a finding that they reached an agreement with Joey and Robbyn Arriola to lease the Lawson Farm, and a finding that the July 6, 2011 "Lease Contract for Farm 4888" did not constitute the entire agreement of the

16

parties as to the lease.[82] Other than the jury's finding that the lease was to go through December 31, 2016, but they did not obtain findings of the essential terms of the contract.[83] In particular, they did not obtain a finding to support their argument that they did not have to pay rent in 2011, or any finding as to the rent due under the lease or whether their trapping was hunting. The trial court's judgment is therefore unsupported by the findings because they fail to establish the terms of payment of rent under the lease or whether trapping is hunting.

The jury's answers do not tell us what the lease agreement was. If we don't know what the lease agreement terms are, how do we know whether the Appellants or the Kutscherouskys breached the lease? The answer is we don't. How do we know if the jury found that the lease agreement required rent for 2011? We don't. Thus, this Court should therefore reverse and render judgment that the Appellees take nothing by their lawsuit.

## II. The trial court erred in entering judgment against Raven and Jack.

It is undisputed that Raven and Jack did not sign the lease. The Kutscherouskys had the burden to show that Joey or Robbyn Arriola had authority or the apparent authority from Raven and to Jack bind them to the terms of the Lease. *See, Verizon Corporate Services Corp. v. Kan-Pak Systems, Inc.,* 290 S.W.3d 899 (Tex. App. – Amarillo 2009, no pet.) (party alleging agency has the

---

[82] CR 634, 638.
[83] CR 642.

burden to prove its existence). The Kutscherouskys also had the burden to show that Raven and Jack Lawson ratified the actions of Joey and Robbyn Arriola. *See, Southwestern Bell Co. v. Wilson,* 768 S.W.2d 755, 764 (Tex. App.—Corpus Christi 1988, no pet.) (burden of proof is on the party asserting ratification).

In evaluating the sufficiency of the evidence where the other party had the burden of proof at trial, the evidence is legally insufficient when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Allegiance Hillview, L.P. v. Range Texas Production LLC*, 347 S.W.3d 855, 864 (Tex. App.—Fort Worth 2011, no pet.) *(citing, in part, Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.3d 328, 334 (Tex. 1998)). This Court reviews the evidence as a reasonable factfinder would that is favorable to the finding and disregards evidence contrary to the finding unless a reasonable factfinder could not. *Id*. at 864-65 (*citing, in part, Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007)).

A scintilla of evidence is that evidence offered to prove a vital fact that does no more than create a mere surmise or suspicion of its existence and, in legal effect, constitutes no evidence. *Id.* at 865 (*citing Kindred v. Con/Chem, Inc.*, 650

S.W.2d 61, 63 (Tex. 1983)). More than a scintilla exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Id.* However, a jury may not infer a vital fact from "meager circumstantial evidence which could give rise to any number of inferences, none more probably than another." *Hancock v. Variyam*, 2013 WL 2150468, at *9 (Tex. 2013); *Winegar v. Martin*, 304 S.W.3d 661, 668 (Tex. App.—Fort Worth 2010, no pet.) ("Any plausible inference would be a guess; consequently, 'neither fact may be inferred'").

When reviewing the factual sufficiency of the evidence to support a jury finding on an issue on which the other party has the burden of proof, the attacking party must demonstrate there is insufficient evidence to support the adverse finding. *Star Enterprise v. Marze*, 61 S.W.3d 449, 462 (Tex. App.—San Antonio 2001, pet. denied). This Court must consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. *Id.* If the evidence supporting the jury's decision is so weak as to be clearly wrong and manifestly unjust, the decision must be reversed. *Id.*

**A.    There is no evidence or insufficient evidence to support the jury's finding that Joey or Robbyn had authority or apparent authority from Raven and Jack to lease the Farm to Eric.**

An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or

19

to the third party (apparent or implied authority). *Gaines v. Kelly,* 235 S.W.3d 179, 182 (Tex. 2007), *citing Hester Int'l Corp. v. Fed. Republic of Nig.,* 879 F.2d 170, 181 (5th Cir. 1989).

The fact that the Arriolas, Jack, and Raven are co-tenants is of no effect. Cotenants are not partners, nor is one co-tenant an agent of another co-tenant. *See, Horlock v. Horlock,* 614 S.W.2d 478 (Tex. Civ. App. – Houston [14th Dist.] 1981, writ ref'd n.r.e.) ("A co-tenant is neither a partner with nor an agent of the other cotenant"); *Dyer v. Cotton,* 333 S.W.3d 703 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("co-tenants are not agents"). A co-tenant cannot act for another co-tenant in the absence of express authority and does not have authority to bind another co-tenant simply because of the relationship. *Horlock,* 614 S.W.2d at 485 ("[I]t is the general rule that in the absence of express authority [one co-tenant] cannot act for another co-tenant."); *Bockelmann v. Marynick,* 788 S.W.2d 569, 572 (Tex. 1990) ("each owner in a co-tenancy acts for himself").

The Supreme Court has also held that it is *essential* to show that the principal had full knowledge of all material facts in order to establish a claim based on apparent authority, and only the conduct of the principal is relevant. *Gaines*, 182 S.W.3d at 182, *citing Rourke v. Garza,* 530 S.W.2d 794, 803 (Tex. 1975), *Nations Bank, N.A. v. Dilling,* 922 S.W.2d 950, 953 (Tex. 1996) (per curiam). The determination of apparent authority is measured by the reasonably prudent person,

20

"using diligence and discretion to ascertain the agent's authority." *Gaines,* 182 S.W.3d at 183, *citing Chastain v. Cooper & Reed,* 152 S.W.2d 422, 427 (Tex. 1953). Apparent authority must be based on the acts of the principal. *Gaines,* 253 S.W.3d at 184, *citing First Valley Bank of Los Fresnos v. Martin,* 144 S.W.3d 466, 471 (Tex. 2004).

In this case, there is absolutely no evidence that Pritchett or Lawson authorized the lease with Eric. Lawson testified:

> I'm telling the jury that I was fine with Robbyn and her husband living down there. I had no problem with that. But I gave them no specific permission to enter into any business negotiations or dealings on my behalf or represent me.[84]

In fact, Raven and Jack were oblivious to the fact that the Arriolas had leased the property to Eric.[85] Joey never told them about the lease, did not tell them when a check came in, and Raven and Jack never received any of the money paid on the lease.[86]

Eric contracted with Joey and Robbyn, assuming that they owned the farm.[87] He did not contract with Jack or Raven and did not have any evidence that Jack or Raven consented to the lease or authorized Robbyn to act on their behalf in entering into the lease. Robyn's lease of the property does not bind Jack and Raven

---

[84] 4 RR 74.
[85] 4 RR 10, 11, 12, 13, 17, 19, 44, 45, 63, 64, 65, 67, 68.
[86] 4 RR 104-105.
[87] 3 RR 229.

simply because they are cotenants. *See, e.g., Willson v. Superior Oil Co.,* 274 S.W.2d 947, 951 (Tex. App. – Texarkana 1954, no writ) (A lease executed by one co-tenant is valid as between the parties, but ineffectual as to the co-tenant of the grantor.").

There is no evidence to support the jury's finding, and this Court should reverse and render in favor of Raven and Jack on this point. In the alternative, there is insufficient evidence to support the jury's finding and this Court should reverse and remand for a new trial on this issue.

**B.      There is no evidence to support the jury's finding that Pritchett and Lawson ratified the lease, either.**

Ratification is the adoption or confirmation by a person with knowledge of all material facts, of a prior act that did not then legally bind that person and which that person had a right to repudiate. *City of The Colony v. N. Tex. Mun. Water Dist.,* 272 S.W.3d 699, 732 (Tex. App. – Fort Worth 2008, pet. denied); *See also, Miller v. Kennedy & Minshew, Prof'l. Corp.,* 142 S.W.3d 325, 342 (Tex. App. – Fort Worth 2003, pet. denied) (stating that a person ratifies an unauthorized act if, by word or conduct, with knowledge of all material facts, he confirms or recognizes the act as valid). If the evidence is uncontroverted, whether a principal has ratified the conduct of an agent may be determined as a matter of law. *The Colony,* 272 S.W.3d at 732. The factfinder cannot infer ratification from acts that the principal has the right to do, independently and without knowledge of the

22

unauthorized transaction in question. *Texas Pacific Coal & Oil Co. v. Smith,* 130 S.W.2d 425 (Tex. Civ. App. – Eastland 139, writ dism'd, judgm't cor.). This is no different in the context of a cotenancy – a cotenant must have knowledge of the material facts in order to ratify the action of another cotenant. *Magee v. Hambleton,* No. 2-08-441-CV, 2009 Tex. App. LEXIS 6778 (Tex. App. – Fort Worth August 25, 2009, pet. denied).

Raven and Jack could not have known the material facts in connection with the Lease because they had no idea the land had even been leased.[88] They did not give the Arriolas permission to bind them to the terms of the Lease at any point.[89] There is simply no evidence that Raven or Jack ratified the Lease, and as such this Court should reverse the judgment and render in their favor.

**III. The July 6, 2011 Lease constitutes the entire agreement between the parties as a matter of law because the parol evidence rule precludes the consideration of the May 26, 2011 document and any prior oral agreement.**

The primary concern in construing a written agreement is to ascertain and give effect to the true intent of the contracting parties as expressed in the written instruments. *Lenape Resources Corp. v. Tennessee Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex. 1996).It was the Kutscherouskys' burden to plead, prove, and obtain a favorable finding of ambiguity, mistake, or any other basis to invalidate

---

[88] 4 RR 10, 11, 12, 13, 17, 19, 44, 45, 63, 64, 65, 67, 68.
[89] Id.

23

the lease in order to look beyond the four corners of the Lease to the oral agreements and the May 2011 statement. They did not do so. The jury was not asked to and did not find that the Lease was ambiguous or that mutual mistake belied the terms of the Lease.

Where a contract is unambiguous, like the Lease in this case, the court will give effect to the intention of the parties as expressed or apparent in the writing. *Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex. 1968) "In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *Id.*

When the parties have entered into a valid integrated agreement, the parol evidence rule precludes enforcement of a prior or contemporaneous inconsistent agreement. *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796 (Tex.App—Houston [1st Dist.] 2008, pet. filed); *ISG State Operations, Inc. v. National Heritage Insurance Company*, 234 S.W.3d 711,719 (Tex.App.—Eastland 2007, pet. denied). The execution of a written contract presumes that all prior negotiations and agreements relating to the transaction have been merged into the written contract. *Edascio*, 264 S.W.3d at 796; *ISG State Operations*, 234 S.W.3d at 719. Consequently, the agreement will be enforced as written and cannot be added to, varied, or contradicted by parol evidence. *Edascio*, 264 S.W.3d at 796; *ISG State Operations*, 234 S.W.3d at 719.

The parol evidence rule is not just a rule about the admissibility of testimony and extraneous evidence. The parol evidence rule is a rule of substantive contract law, not evidence. *Hubacek v. Ennis State Bank*, 159 Tex. 166. 317 S.W.2d 30, 31 (1958); *DeClaire v. G & B McIntosh Family Limited Partnership*, 260 S.W.3d 34, 45 (Tex.App.—Houston [1st Dist.] 2008, no pet.).

Evidence that violates the rule is incompetent and without probative force, and cannot properly be given legal effect. *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 859 (Tex.App.—Dallas 2008, no pet.). Parol evidence may be admissible to show collateral, contemporaneous agreements that are consistent with the underlying agreement. *Gary E. Patterson & Associates, P.C. v. Holub*, 264 S.W.3d 180, 197 (Tex.App.—Houston [1st Dist.] 2008, pet. denied); *DeClaire*, 260 S.W.3d at 45. But this exception does not permit parol evidence that varies or contradicts either the express terms or the implied terms of the written agreement. *Gary E. Patterson*, 264 S.W.3d at 197; *DeClaire*, 260 S.W.3d at 45.

A collateral agreement is one the parties might naturally make separately, *i.e.*, one not ordinarily expected to be embodied in, or integrated with the written agreement and not so clearly connected with the principal transaction as to be part and parcel of it. *Garner*, 244 S.W.3d at 859. An agreement is integrated if the parties intended a writing to be a final and complete expression of agreed terms. *Morgan Buildings and Spas, Inc. v. Humane Society of Southeast Texas*, 249

25

S.W.2d 480,486 (Tex.App.—Beaumont 2008. no pet.). The inclusion of a merger or integration clause does not conclusively establish that the written contract is fully integrated. *Id.* A fully integrated written agreement is a final and complete expression of all the terms agreed upon by the parties. *Id.* A court considers the surrounding circumstances in determining whether, and to what degree, an agreement is integrated. *Id.*

In this case, the Kutscherouskys claimed that the statements signed on May 26, 2011 constituted an enforceable agreement between the parties. Specifically, Joey and Robbyn Arriola signed a document which stated:

> Tommy Kutscherousky, Sr., Tommy Kutscherousky, Jr. and Eric Kutscherousky has my farm #4888, leased from January 1, 2011 to December 31, 2016.[90]

This document could not possibly constitute a lease because it has no terms. It has no rental rate for the lease. The amount of rent to be paid is a material term of the lease without which there is no lease. *See, Wilson v. Wagner,* 211 S.W.2d 241, 243-244 (Tex. Civ. App. – San Antonio 1948, writ ref'd n.r.e.) (holding that "a definite and agreed price of rental" is one of the few essential terms necessary to create a valid lease.).

---

[90] 7 RR PX2.

The Kutscherouskys claimed that this document reflected a term of six years for the lease, which conflicts with the duration provision provided in the July 2011 Lease. The July 2011 Lease provides that it will run through December 31, 2015.[91]

The second piece of parol evidence relied upon by the Kutscherouskys is an alleged oral agreement, also *before* July 2011, that the Kutscherouskys did not have to pay any rent in 2011 because they would be "restoring" the farm.[92] In support, they relied upon an unsigned piece of paper that listed purported rental amounts for the Lease.[93] Not only is this piece of paper unsigned, but it too states that it was "AGREED UPON ON MAY 26, 2011" – *before* the July 6, 2011 Lease.[94] Further, there is no evidence of when this document was actually typed.

Tommy Jr. testified that the rent provision was written in the contract, and that Eric did not object to signing the July 2011 Lease, and if he did object to it he should not have signed it:

> Q: That's what's written in the contract.
>
> A: It's in the contract. I agree.
>
> Q: Okay. And if it's written on the contract, and it's signed by your brother, he should have paid rent for 2011.
>
> A: That's what it says.

---

[91] 7 RR PX6.
[92] See, 7 RR PX2a.
[93] 7 RR PX2a.
[94] Id.

27

Q: Or he should have said, "I'm not signing it."

A: Correct.

Q: But he did sign it.

A: Yes.

Q: Now, because he signed it, my question is: Do you believe that you were obligated to pay rent for 2011?

A: Yes.[95]

[…]

Q: But as that contract was written, he either should not have signed it, or they should have paid rent for 2011. Is that correct?

A: Yes.[96]

In any event, the oral agreement would violate the Statute of Frauds, which requires all agreements regarding land to be in writing. TEX. BUS. & COMM. CODE § 26.01(a)(5).

These agreements would have been admissible but only to the extent they were consistent with the final Lease. *See, Holub*, 264 S.W.3d at 197. Texas law is clear that such prior agreements cannot contradict the express or implied terms of the written agreement. *Id.*

---

[95] 3 RR 97. See also, 3RR 53 (Q: Where is the rental payment from January 1st, 2011 to December 31st, 2011? A: There's not one. Q: Does the lease say that that money is owed for that period? A: The second lease does. […] Q: Well would you agree that [the rent provision is] in this lease? A: Yes.)

[96] 3 RR 99.

Eric admitted at trial that the Arriolas presented the lease to him, offered him the opportunity to read it, that he read it, and that he signed it after he read it.[97] He acknowledged that he read the lease term that required payment of $10 per acre for 182 acres for 2011, but testified that the jury should just ignore that.[98] It is well established under Texas law that parties are bound by written contracts even if they fail to read the contracts, and will not be relieved from the contract's terms and provisions unless they provide some legal excuse (such as fraud, accident, or mistake) for failing to read and understand the contract before signing it. *In re Lyon Financial Services, Inc.,* 257 S.W.3d 228 (Tex. 2008); *In re Green Tree Servicing LLC,* 275 S.W.3d 592 (Tex. App. – Texarkana 2008, no pet.) ("every person who has the capacity to enter into a contract is held to know what words were used in the contract, to know their meaning, and to understand their legal effect."). Eric did not allege or prove any fraud, mistake, or other circumstance that would excuse him from his obligations under the Lease.

Further, in February of 2013, Tommy Jr. filed in the public records an Affidavit as to Lease of Real Property that states "Lessor leased to Lessee effective January 1, 201, the Property, for a term of five (5) years."[99] Tommy also swore

---

[97] 3 RR 296.
[98] Id.
[99] 7 RR PX 17.

under oath that rent was due in 2011 by attaching the July 2011 Lease to that affidavit.

The Lease entered into between Eric, Robbyn Arriola, and Joey Arriola was the complete understanding of the terms and conditions between the parties on the date it was signed in July of 2011. Any introduction of prior understandings, agreements, or oral contracts that contradict the final terms memorialized in the written contract violate the parol evidence rule.

## IV.  The Kutscherouskys breached the lease as a matter of law.

### A.  Standard of Review.

The Appellants had the burden of proving the Kutscherouskys breached the lease. Where the challenging party had the burden of proof, they must demonstrate on appeal that the evidence conclusively established, as a matter of law, all vital facts in support of the issue. *Dow Chemicals v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001). The reviewing court first examines the record for evidence in support of the finding while ignoring all evidence to the contrary. *Minyard Food Stores v. Goodman,* 80 S.W.3d 573, 577 (Tex. 2002). If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989). A matter is conclusively established if

reasonable people could not differ as to their conclusions. *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005).

In order to set aside an adverse finding where the challenging party had the burden of proof, the finding must be against the great weight and preponderance of the evidence. *Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989), *Dow,* 46 S.W.3d at 242. The court of appeals must consider and weigh all of the evidence, and can set aside the jury's verdict where the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

**B.      The evidence conclusively established that the Kutscherouskys breached the lease by trapping feral hogs.**

**i.      It is undisputed that the Kutscherouskys engaged in trapping feral hogs, which constitutes "hunting."**

The Kutscherouskys do not dispute that they engaged in trapping feral hogs on the lease property, nor is it disputed that the lease prohibits hunting of any kind on the lease property. Instead, the Kutscherouskys have defended their hunting of the feral hogs by arguing that it did not constitute hunting. But this is contrary to Texas law, as well as to common usage of the term "hunting."

The Kutscherouskys did not obtain a finding that the lease was ambiguous, so the terms of the lease must be enforced as written. *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex. 1984). The construction of an unambiguous contract is a

31

question of law, which the appellate court reviews de novo. *Tawes v. Barnes,* 340 S.w.3d 419, 425 (Tex. 2011).

The term "no hunting of any kind" is unambiguous and the Kutscherouskys' trapping of feral hogs violates this provision.

Texas has defined the term "hunt" as "capture, **trap**, take, or kill, or an attempt to capture, **trap**, take, or kill." TEX. PARKS & WILD. CODE § 1.101(1) (emphasis added). The same section defines "Take" as a means to "collect, hook, hunt, net, shoot, or snare, by any means or device, and includes an attempt to take or to pursue in order to take." TEX. PARKS & WILD. CODE § 1.101(5). In construing words used in a contract or in a statute, the court is to give such terms their ordinary meaning. *See, Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005) ("Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense."), TEX. GOVT. CODE § 312.002 (words shall be given their ordinary meaning). In fact, many states have defined hunting as including any means of killing or capturing animals, such as trapping, snaring, netting, hooking or otherwise trapping or otherwise pursuing an animal.[100] For example, Louisiana

---

[100] *See, e.g.,* Alaska Stat. §16.05.940 (21) ("hunting" means the taking of game …); *Conn. Gen. Stat. Ann.* § 26-1. (12) ("Hunting" means pursuing, shooting, killing and **capturing** […] and attempting to pursue, shoot, kill and **capture**" […] whether such act results in taking or not, including any act of assistance to any other person in taking or attempting to take any such animal.); *Ga. Code Ann.* § 27-1-2. (39) "Hunting" means pursuing, shooting, killing, **taking, or capturing wildlife or feral hogs**. This term also includes acts such as **placing, setting, drawing,**

32

statute defines "hunt" in reference to "take," and take include terms such as attempt to **trap**, shoot, hunt, wound, kill, hook, pursue, net, capture, and snare. *La. Rev. Stat. Ann.* § 56:116.1 (emphasis added).

Whether the Kutscherouskys were trapping the hogs in order to prevent degradation of the land and crops does not remove these activities from the

---

**or using any device used to take wildlife or feral hogs**, whether any such act results in taking or not, and includes every act of assistance to any person in taking or attempting to take such wildlife or feral hogs.); *Iowa Code Ann.* 481A.1 (32. **"Take" or "taking" or "attempting to take"** or "hunt" is any pursuing, or any hunting, fishing, killing, **trapping**, **snaring, netting,** searching for or shooting at, stalking or lying in wait for any game, animal, bird, or fish protected by the state laws or rules adopted by the commission whether or not such animal be then subsequently **captured**, killed, or injured.); *Ky. Rev. Stat. Ann.* § 150.010 ((12)"Hunting" means to take or attempt to take in any manner, whether the hunter has game in possession or not;); *Me. Rev. Stat. Ann. Tit. 12,* § 7001(To "hunt" means to pursue, catch, **take,** kill or harvest wild animals or wild birds or to attempt to catch, **take,** kill or harvest wild animals or wild birds.); *Minn. Stat. Ann.* § 97A.015 ("Hunting" means taking birds or mammals.); *Mont. Code. Ann.* § 87-2-101 ((8) "Hunt" means to pursue, shoot, wound, kill, **chase, lure,** possess, or **capture** or the act of a person possessing a weapon, as defined in 45-2-101, or using a dog or a bird of prey for the purpose of shooting, wounding, killing, **possessing, or capturing** wildlife protected by the laws of this state in any location that wildlife may inhabit, whether or not the wildlife is then or subsequently taken. The term includes an **attempt to take by any means**, including but not limited to pursuing, shooting, wounding, killing, chasing, luring, **possessing**, or **capturing**); *Neb. Rev. Stat.* § 37-232(Hunt means to pursue, shoot, catch, capture, collect, harvest, kill, destroy, or attempt to pursue, shoot, catch, capture, collect, harvest, kill, or destroy.); *Ohio Rev. Code Ann.* § 1531.01 ((Y)(H) "Hunting" means pursuing, shooting, killing, following after or on the trail of, **lying in wait for**, shooting at, or wounding wild birds or wild quadrupeds while employing any device commonly used to kill or wound wild birds or wild quadrupeds whether or not the acts result in killing or wounding. "Hunting" includes every attempt to kill or wound and every act of assistance to any other person in killing or wounding or attempting to kill or wound wild birds or wild quadrupeds.);34 *Pa. Consol. Stat. Ann.* § 102 (*"Hunt"* or *"hunting."* Any act or furtherance of the taking or killing of any game or wildlife, or any part or product thereof, and includes, but is not limited to, chasing, tracking, calling, pursuing, lying in wait, **trapping**, shooting at, including shooting at a game or wildlife facsimile, or wounding with any weapon or implement, or using any personal property, including dogs, or the property of others, of any nature, in furtherance of any of these purposes, or aiding, abetting or conspiring with another person in that purpose.);*Wash. Rev. Code Ann.* § 77.08.010 ((7) "To hunt" and its derivatives means an effort to kill, injure, **capture**, or harass a wild animal or wild bird.).

33

provision of the Lease prohibiting "hunting of any kind." The parties expressly used the most encompassing term of hunting possible by using the phrase "hunting of any kind." Hunting is not limited to recreational or commercial activities, but is also promoted by the State as a means to prevent overpopulation of wild game, with deer as perhaps the most notable example. *See, e.g., Shrieve v. Tex. Parks & Wildlife Dept.,* No. 03-04-00640-CV, 2005 Tex. App. LEXIS 3406 *2 (Tex. App. – Austin May 5, 2005, no pet.) ("An important aspect of deer population management is hunting."). Trapping hogs to prevent damage to crops as a sort of "pest control" does not remove them from the umbrella of "hunting" activities. *See, e.g.,* See also, Wikipedia, *Hunting*, http://en.wikipedia/wiki/Hunting ("Hunting is the process of killing or trapping any animal […] Hunting can also be a means of pest control.") (as of April 30, 2015); Jared Timmons, *Feral Hog Laws and Regulations in Texas,* AgriLIFE Extension, Texas A&M System feralhogs.tamu.edu/files/2011/08/Feral-Hog-Laws-and-Regulations-in-Texas.pdf (April 30, 2015) ("[A]ny landowner that plans to trap or snare hogs should have a valid Texas hunting license, since these activities could affect other wildlife species.").

Like a deer hunter might lay out corn to await a deer in the early morning hours, the Kutscherouskys laid out corn and placed traps to ensnare feral hogs on

the lease property with corn.[101] Tommy Jr. testified at trial that he tries to kill as many hogs as he can, and Eric is a competition winning hog hunter and kills hogs.[102] Whether they were doing so for recreation or in order to prevent feral hogs from damaging the crops does not matter; they were still engaged in the practice of "hunting" in violation of the express terms of the Lease. Robbyn wanted that provision in the lease because she has horses, donkeys, goats, a duck, and other animals on the property.[103] Eric knew that Robbyn liked to walk the Farm and did not want there to be any hunting.[104] Robbyn did not want any traps on her property because she did not want any of her animals to get caught in them, but also did not want any migratory deer to get caught in the traps, either.[105] This is also why she insisted on a provision that the Kutscherouskys maintain the fence line.

The evidence conclusively establishes as a matter of law that the Kutscherouskys violated the lease by hunting feral hogs on the property, and as such this Court should reverse and render judgment that the Appellees take nothing and remand this matter to the trial court for Appellant's attorney's fees. In the alternative, the jury's failure to find that the Kutscherouskys' trapping of feral hogs

---

[101] 2 RR 77-78

[102] 3 RR 74; 3 RR 273-278; 4 RR 98-99.

[103] See, 4 RR 120, 7 RR DX 7 (photos of the animals).

[104] 3 R 245.

[105] 4 RR 228-229.

did not breach the release is against the great weight and preponderance of the evidence and this Court should reverse and remand this case for a new trial.

### ii. The trial court erred in refusing to instruct the jury as to the definition of "hunting."

The trial court has broad discretion in submitting jury instructions, but Rule 278 of the Texas Rules of Civil Procedure requires the trial court to submit such instructions as are raised by the written pleadings and the evidence. TEX. R. CIV. P. 278. The trial court's rejection of a jury instruction is reviewed for abuse of discretion and will be reversed if the complaining party shows the instruction amounted to such a denial of the complaining party's rights that it probably caused the rendition of an improper judgment. *Thota v. Young,* 366 S.W.3d 678 (Tex. 2012). The appellate court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety in determining whether the rejection of a proposed instruction constituted error. *Id.*

The Defendants requested the following definition be included in the jury instructions:

Sect. 1.101 Definitions:

(1) "Hunt" means capture, trap, take or kill, or attempt to capture, trap, take or kill.

And the Defendants requested the following question be included:

Do you find that the Plaintiffs engaged in hunting as defined in the Texas Parks and Wildlife Code, as defined in Sect. 1.01(1) during the term of the lease?[106]

"An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and the evidence." *Union Pac. R.R. Co. v. Williams,* 85 S.W.3d 162, 166 (Tex. 2002). In *Williams,* the Supreme Court held that it was improper for the trial court to refusal to submit an instruction as to "foreseeability" in a case under the Federal Employers Liability Act because giving the instruction would have enabled the jury to determine whether Union Pacific owed a duty to its employee to use reasonable care at a derailment site. *Id.* at 170. Without that instruction, the court reasoned, the jury made a liability finding without first determining whether Union Pacific owed a duty to its employee. *Id.*

The jury charge is already deficient in its failure to define the essential terms of the lease. See, Section I., *supra.* Without these essential terms, and especially in light of the jury's finding that the Lease does not constitute the full agreement of the parties, the refusal to submit the requested instruction and question is especially harmful. It leaves open the reasoning for why the jury found that the Kutscherouskys did not fail to comply with the terms of the lease.[107] We do not know if the jury determined that the Kutscherouskys did not hunt on the land, or

---

[106] CR 652.
[107] 5 RR 10.

that trapping feral hogs is not hunting, or if they found that the "no hunting of any kind" provision was not a term in the agreement. Without knowing this, the failure to submit the above requested instruction and question constitutes error and probably resulted in the rendition of an improper judgment. This Court should reverse the trial court's judgment on this basis and remand this case to the trial court.

### C.    It is undisputed that the Kutscherouskys failed to pay rent.

Eric wrote a check for $1,820 to Joey in May of 2011 for payment of rent on the Lease.[108] The Kutscherouskys claim that the parties agreed that no rent would be due under the Lease for the year of 2011. Their claim is barred by the parole evidence rule, as the Lease clearly states that Lessee agrees to pay $10 per acre for 182 acres for period of Jan. 1, 2011-Dec. 31, 2011."[109] See, Section III, regarding the application of the parole evidence rule. Furthermore, Tommy Jr. admitted that the rent term was "in the contract" and that they were obligated to pay rent for 2011 under the contract.[110]

The parties claim that no rent for 2011 was received and that they made no payment of rent for 2011. Therefore, as a matter of law the Kutscherouskys did not pay rent and they also as a matter of law breached the lease.

---

[108] 7 RR PX3.
[109] 7 RR PX6.
[110] 3 RR 97.

Additionally, whether the May 2011 check is applied to 2011 or 2012, the Kutscherouskys failed to pay the rent due under the lease. If we were to accept the Kutscherouskys argument that the May 2011 check applied to 2012, they failed to pay for 2011. If the May 2011 check is applied to 2011, they failed to pay rent for 2012. Either way, it is established as a matter of law that they failed to pay rent and therefore breached the Lease. This Court should reverse and render judgment in favor of the Appellants. In the alternative, the jury's finding is so against the great weight and preponderance of the evidence that it warrants remand.

**D.    The Kutscherouskys failed to maintain the fence line as required by the Lease.**

The Arriolas provided notice to Eric on January 11, 2013 that the Lease had been breached by the failure to maintain the fence line around the property as agreed:

> Reason #1 for termination is failure to maintain the fence line around said property as stipulated on Term 2 of signed lease dated July 6, 2011. Specifically, it was agreed that you would provide the materials. The fence lines have not been even minimally maintained. Further, the back gate has been extensively damaged by your usage; it has not been repaired. We were very clear that fence maintenance was extremely important to us, and one motivation to lease at such a reduced rate.[111]

---

[111] 7 RR PX14.

39

The Lease requires that the Kutscherouskys "do all maintenance to the fenceline surrounding said property."[112] Photos of the fence in disrepair were admitted before the trial court.[113] At one point, trees had fallen onto the fence and there were broken fences.[114] Joey testified that he asked Eric to help repair the fence line and he didn't.[115] Photos of the fence gate at the back of the pasture also showed that it was broken.[116] When asked about the gate, Tommy admitted that it did not look like a properly-maintained gate.[117]

## V.     The evidence is insufficient to show that the Appellants breached the lease.

### A.     Standard of Review.

Because the Kutscherouskys had the burden to show that the Appellants breached their lease, this Court reviews the evidence as a reasonable factfinder would that is favorable to the finding and disregards evidence contrary to the finding unless a reasonable factfinder could not in order to determine if the evidence is legally sufficient. *Allegiance Hillview,* 347 S.W. at 864-65. In determining the factual sufficiency, this Court must consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. *Star Enterprise,* 61 S.W.3d at 462. If the evidence supporting the

---

[112] 7 RR PX6.
[113] 7 RR DX10.
[114] 7 RR DX10; 4 RR 91-92.
[115] 4 RR 9.
[116] 7 RR DX10, page 13; 4 RR 91-93.
[117] 3 RR 79.

40

jury's decision is so weak as to be clearly wrong and manifestly unjust, the decision must be reversed. *Id.*

**B.      The Arriolas did not breach the lease by terminating it.**

The Lease provided that "failure to follow these terms will result in automatic termination of this contract, (with a 30 day notice of termination), without any refund of the monies previously paid to date."[118] The Arriolas provided notice of termination on January 11, 2013, and although the Lease provided that noncompliance would result in *automatic* termination of the Lease, a Notice to Vacate was issued on March 8, 2013.[119]

The Lease automatically terminated for three reasons:

1) The Kutscherouskys did not pay rent for 2012;

2) The Kutscherouskys were hunting on the lease by trapping feral hogs; and,

3) The Kutscherouskys did not maintain the fence line around the property.

It is undisputed that the Kutscherouskys did not pay rent. See, Section V.B. above. It is also undisputed that the Kutscherouskys were trapping hogs on the property, and that constitutes "hunting" in violation of the terms of the Lease. See, Section V.C., above. And the evidence showed that the Kutscherouskys were not

---

[118] 7 RR PX 6.
[119] 7 RR PX 14, 19.

maintaining the fence line around the property as required. See, Section V.D., above.

The July 2011 Lease states that failure to follow its terms will result in "automatic termination."[120] On January 11, 2013, Joey and Robbyn wrote to Eric to inform him that the lease was being terminated.[121] And even though the lease automatically terminated when they failed to comply with its terms, the Arriolas waited almost two months before issuing a notice to vacate.[122] The evidence established that the Kutscherouskys breached the lease as a matter of law through their failure to pay rent, and also establishes that they breached the lease by hunting feral hogs on the property and failing to maintain the fence line.[123]

Because it was established as a matter of law that the Kutscherouskys breached the lease as a matter of law, this Court should reverse the trial court's judgment and render judgment that the Kutscherouskys take nothing. Alternatively, because the jury's finding that the Appellants breached the lease is so against the great weight and preponderance of the evidence, this Court should reverse the judgment and remand to the trial court for further proceedings.

---

[120] 7 RR PX6.
[121] 7 RR PX14.
[122] 7 RR PX 19.
[123] See, Section V, above.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Appellants Robbyn Elizabeth Coy Arriola, Joey Arriola, Jack Henry Lawson and Raven Jonae Pritchett respectfully request that the Court reverse the judgment of the trial court, render that Appellees take nothing, render that Appellees breached the Lease, remand this matter to the trial court for the consideration of Appellants' attorney's fees; or, in the alternative, remand this matter to the trial court for a new trial, and all other relief to which they are justly entitled.

Respectfully submitted,

/s/ Thomas M. Michel
Thomas M. Michel
State Bar No. 14009480
Thomasm@lawgjm.com
Robley E. Sicard
State Bar No. 24075074
robleys@lawgjm.com
GRIFFITH, JAY & MICHEL, LLP
2200 Forest Park Blvd.
Fort Worth, Texas 76110
(817) 926-2500 (Telephone)
(817) 926-2505 (Facsimile)
ATTORNEYS FOR APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to the following attorney of record via E-service on the 1st day of May, 2015.

Greg White
4300 West Waco Drive, Suite B2-293
Waco, Texas 76710
greg.white@texapplaw.com

/s/ Thomas M. Michel

## CERTIFICATE OF COMPLIANCE

This is to certify that according to the word count on Microsoft Word 2010 used to prepare this brief, the foregoing brief contains 10,148 words exclusive of the portions exempted by 9.4(i)(1).

/s/ Thomas M. Michel

# **APPENDIX**

A.   Judgment signed on October 31, 2014

B.   Court's Charge to the Jury filed October 16, 2014

C.   Exhibit 6 – July 6, 2011 Lease Contract for Farm #4888

NO. 30,122-B

| | | |
|---|---|---|
| TOMMY KUTSCHEROUSKY, SR., ET AL, | § | IN THE 87TH JUDICIAL DISTRICT |
| DBA KUTSCHEROUSKY FARMS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | COURT OF |
| | § | |
| ROBBYN ELIZABETH COY ARRIOLA, | § | |
| ET AL, | § | |
| | § | |
| | § | |
| Defendant | § | LIMESTONE COUNTY, TEXAS |

## JUDGMENT

At the conclusion of the evidence, the Court submitted the case to the jury. The charge of the Court and the verdict of the jury are incorporated for all purposes by reference. After the jury returned its verdict, Plaintiffs moved for judgment on the verdict. The Court, having considered the motions of Plaintiffs and Defendants and because it appears to the Court that the verdict of the jury was totally for the Plaintiffs and against the Defendants, judgment should be rendered on the verdict in favor of the Plaintiffs and against the Defendants.

IT IS THEREFORE ORDERED by the Court that the Motion of Plaintiffs for Judgment On The Verdict, as amended, is granted and any relief sought by the Defendants is denied.

It is accordingly ADJUDGED that Tommy Kutscherousky, Sr., Tommy Kutscherousky, Jr., and Eric Kutscherousky, d/b/a Kutscherousky Farms, a general partnership, Plaintiffs, recover from Robbyn Elizabeth Coy Arriola, Joey Arriola, Jack Henry Lawson, Raven Jonae Pritchett, Defendants, Judgment for the following:

JUDGMENT
K:\^JAS\Kutscherousky-13.124\jdgmnt.wpd\10s

Page 1

**APPENDIX A**

(a)     $177,687.70 as the total damages awarded by the jury;

(b)     Prejudgment interest in the amount of $7,925.84;

(c)     $76,500.00 as attorney's fees through trial;

(d)     Total judgment in the amount of $262,113.54;

(e)     Additional attorneys fees in the event of appeal of the judgment by the Defendants; $10,000 for representation through appeal to the Court of Appeals; $3,000 for representation at the petition for review stage in the Supreme Court of Texas; $7,500 for representation at the merits briefing stage in the Supreme Court of Texas; and, $5,000 for representation through oral argument and the completion of proceedings in the Supreme Court of Texas;

(f)     All costs of Court; and,

(g)     Interest at the rate of five percent (5.00%) per year, compounded annually, on the total judgment of $262,113.54 from the date of Judgment until paid.

It is ORDERED that Plaintiffs shall have all writs of execution and other process necessary to enforce this judgment.

All relief not expressly granted herein is denied.

SIGNED on this 31st day of October, 2014.

Patrick Simmons,
Judge of the 77th Judicial District Court of
Limestone County, Texas, sitting as the Judge
of the 87th Judicial District Court

FILED

2014 OCT 15 AM 10: 56

C... ...: .....: ...S
DISTRICT CLERK
... COUNTY

| | | |
|---|---|---|
| TOMMY KUTSCHEROUSKY, SR., ET AL, | § | IN THE 87TH JUDICIAL DISTRICT |
| DBA KUTSCHEROUSKY FARMS, | § | |
| | § | |
| VS. | § | COURT OF |
| | § | |
| ROBBYN ELIZABETH COY ARRIOLA, | § | |
| ET AL, | § | |
| | § | |
| Defendants | § | LIMESTONE COUNTY, TEXAS |

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

## APPENDIX B

PAGE 02/22
P.002

RAMSEY LAW
9729350224

11:05
11/17/2014

9729350224
9729350224

10:52
11/17/2014

RX Date/Time

Here are the instructions for answering the questions.

1.     Do not let bias, prejudice, or sympathy play any part in your decision.

2.     Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.     You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.     If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.     All the questions and answers are important. No one should say that any question or answer is not important.

6.     Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7.     Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8.     Do not answer questions by drawing straws or by any method of chance.

9.     Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.    Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11.    Unless otherwise instructed the answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

P.003
PAGE 03/22

RAMSEY LAW

9729350224

97293S0224    11:05    11/17/2014

9729350224    11:05

9729350224    16:52    11/17/2014
RX Date/Time

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## INSTRUCTIONS

1.  The property which is the subject of this suit is approximately 205 acres in Limestone County, Texas, known as Farm #4888 in the records of the U.S. Farm Service Agency of Limestone County, Texas. It is hereinafter referred to as the "Farm".

2.  The Plaintiffs in this case, Tommy Kutscherousky, Sr., Tommy Kutscherousky, Jr., and Eric Kutscherousky, d/b/a Kutscherousky Farms are referred to herein collectively as the "Kutscherouskys" or the "Lessees".

3.  The Defendants in this case Robbyn Elizabeth Coy Arriola, Joey Arriola, Jack Henry Lawson, Raven Jonae Pritchett are referred to herein collectively as the "Lessors".

## QUESTIONS

Question __1__.

Do you find there was an agreement between Plaintiffs and Joey and Robbyn Elizabeth Arriola to lease the "Farm"?

In deciding whether the parties reached an agreement you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties unexpressed thoughts or intentions.

Answer        "Yes" or "No"

Answer: __YES__

If you answered "Yes" to Question 1, then answer Question 2. If you answered "No" to

Question 1, then you do not need to answer further questions.

Question 2

Do you find that Joey Arriola or Robbyn Elizabeth Arriola had authority or apparent authority from Raven Jonae Pritchett and Jack Henry Lawson to lease the Farm to the Plaintiffs?

A party's conduct includes the conduct of another who acts with the party's authority or apparent authority.

Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.

Apparent authority exists if a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

Answer "Yes" or "No"

Answer: __YES_____

Question 3.

Do you find Raven Joane Pritchett and Jack Henry Lawson ratified the lease agreement between the Plaintiffs and Joey and Robbyn Elizabeth Arriola?

A party's conduct includes conduct of others that the party has ratified. Ratification may be expressed or implied.

Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification result in the ratification of the entire transaction.

Answer       "Yes" or "No"

Answer:      YES

Question 4.

Do you find that the written agreement signed by Eric Kutscherosky, Robbyn Elilzabeth Arriola and Joey Arriola titled as "Lease Contract for Farm 4888", dated July 6, 2011 was intended by Eric Kutscherosky, Robbyn Elizabeth Arriola and Joe Arriola to be the entire agreement of the parties as regards the lease of the Farm?

Answer   "Yes" or "No"

Answer: _____NO_____

If you answered "No" to Question ___4___, then you must determine the relevant terms of the agreement of the parties. Consider all the facts and circumstances surrounding the making of the agreement, any agreed changes or amendments, any memorialized writings, the interpretation placed on the agreement by the parties, and the conduct of the parties.

If you answered "Yes" to Question ___4___, then you must consider only the terms of the written agreement titled "Lease Contract for Farm 4888" dated July 6, 2011.

You are instructed that a writing is construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties.

P.010    RAMSEY LAW    9729350224    11:05    11/17/2014    9729350224    11:05    11/17/2014    10:52    RX Date/Time

Question: __5__

Do you find that the Defendants failed to comply with a material obligation of the lease agreement?

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

a.      The extent to which the injured party will be deprived of the benefit which he reasonably expected;

b.      the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

c.      the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d.      the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

e.      the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Answer "Yes" or "No"

Answer: __YES__

PAGE 11/22
P.011
RAMSEY LAW
97293S0224
9729350224   11:05   11/17/2014
RX Date/Time   11/17/2014 10:52   9729350224   10:52

Question ____6_____:

Do you find that the Plaintiffs failed to comply with a material obligation of the lease agreement?

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

    a.       The extent to which the injured party will be deprived of the benefit which he reasonably expected;

    b.       the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

    c.       the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

    d.       the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

    e.       the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Answer "Yes" or "No"

Answer: ___NO_____

PAGE 12/22

P.012

RAMSEY LAW

9729350224

11:05

9729350224

11/17/2014

10:52

11/17/2014

RX Date/Time

Question: ___7_____

Do you find the Defendants terminated the lease agreement with Plaintiffs for reasons other than Plaintiffs' failure to comply with the lease agreement?

Answer  "Yes" or "No"

Answer: ___YES_____

Question _____8_____ :

Do you find that the lease agreement provided for the lease to conclude on December 31, 2015 or December 31, 2016?

Answer "December 3, 2015" or "December 31, 2016"

Answer: ___December 31, 2016_____

If you answered "Yes" to Questions 5 or 7, then answer the following Questions 9, 10 and 11.

Question 9. What do you find, if any, was the probable profit loss by the Kutscherouskys for the 2013 crop year?

Answer in dollars and cents, if any: $ 53,743.25

Question 10. What do you find, if any, was the probable profit loss by the Kutscherouskys for the 2014 crop year?

Answer in dollars and cents, if any: $ 44,655.72

Question 11. What do you find, if any, was the probable profit loss by the Kutscherouskys for the 2015 crop year?

Answer in dollars and cents, if any: $ 35,377.81

P.015

RAMSEY LAW          9729350224
9729350224   11:05   11/17/2014
RX Date/Time   11/17/2014 10:52   9729350224

If you answered "Yes" to Questions 5 or 7 and if you answered December 31, 2016 to Question 8, then also answer the following Question 12.

Question 12.

Question 12. What do you find, if any, was the probable profit loss by the Kutscherouskys for the 2016 crop year?

Answer in dollars and cents, if any: $ __43,910.92__

If you answered "Yes" to Question 6 above, then answer question 13.

Question 13. What do you find, if any, was the probable amount of loss by the Defendants for lost rents for the term of the lease?

Answer in dollars and cents if any: $ _____

If you answered "Yes" to either Question 5 or Question 7, then answer Question 14.

Question 14.   What is a reasonable fee for the necessary services of the attorneys for the Kutscherouskys stated in dollars and cents?

Answer with an amount for each of the following:

a.      For representation in the trial court.

Answer:      $ 76,500.00

b.      For representation through appeal to the Court of Appeal.

Answer:      $ 10,000.00

c.      For representation at the petition for review stage in the Supreme Court of Texas.

Answer:      $ 3,000.00

d.      For representation at the merits briefing stage in the Supreme Court of Texas.

Answer:      $ 7,500.00

e.      For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

Answer:      $ 5,000.00

RX Date/Time      11/17/2014  10:52      9729359224      RAMSEY LAW

11/17/2014  11:05      9729359224

If you answered "Yes" to Question 6, then answer Question 15.

Question 15.

What do you find, if any amount, is a reasonable fee for the necessary services of the attorney for the Defendants, stated in dollars and cents?

Answer with an amount for each of the following:

a.   For representation in the trial court.

     Answer:      $_____

b.   For representation through appeal to the Court of Appeal.

     Answer:      $_____

c.   For representation at the petition for review stage in the Supreme Court of Texas.

     Answer:      $_____

d.   For representation at the merits briefing stage in the Supreme Court of Texas.

     Answer:      $_____

e.   For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

     Answer:      $_____

P.019

RAMSEY LAW
9729350224
11:05
11/17/2014
9729350224
10:52
11/17/2014
RX Date/Time

## Presiding Juror

1.     When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2.     The presiding juror has these duties:

    a.     have the complete charge read aloud if it will be helpful to your deliberations;

    b.     preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

    c.     give written questions or comments to the bailiff who will give them to the judge;

    d.     write down the answers you agree on;

    e.     get the signatures for the verdict certificate; and

    f.     notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## Instructions for Signing the Verdict Certificate:

1.     Unless otherwise instructed you may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2.     If ten jurors agree on every answer, those ten jurors sign the verdict.

If eleven jurors agree on every answer, those eleven jurors sign the verdict.

If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.     All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.



*or after*

4. There are some special instructions before Questions 2, 4, 9, 10, 11, 12, 13, 14, and explaining how to answer those questions. Please follow the instructions

Do you understand these instructions? If you do not, please tell me now.

Patrick Simmons,
Judge of the 77th Judicial District Court of
Limestone County, Texas sitting as the
Judge of the 87th Judicial District Court

## Verdict Certificate

Check one:

____✓____ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_Dealva Wilson_                    _Dealva Wilson_
Signature of Presiding Juror        Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

|  | **Signature** | **Name Printed** |
|---|---|---|
| 1. | _____ | _____ |
| 2. | _____ | _____ |
| 3. | _____ | _____ |
| 4. | _____ | _____ |
| 5. | _____ | _____ |
| 6. | _____ | _____ |
| 7. | _____ | _____ |
| 8. | _____ | _____ |
| 9. | _____ | _____ |
| 10. | _____ | _____ |
| 11. | _____ | _____ |

# Lease Contract for Farm #4888

## 538 LCR 184, Coolidge, TX 76635

Eric Kutscherousky (Lesee). has the land listed above leased from January 1, 2011 thru December 31, 2015 for crops and cattle under the terms listed below, from Joey & Robbyn Arriola (Lessor)

1.) Lesee agrees to pay $10 per acre for 182 acres for period of Jan. 1, 2011 – Dec. 31, 2011; $10 per acre for 182 acres for period of Jan. 1, 2012 – Dec. 31, 2012; $12 per acre for 182 acres for period of Jan. 1, 2013 – Dec. 31, 2013; $14 per acre for 182 acres for period of Jan. 1, 2014 – Dec. 31, 2014; $16 per acre for 182 acres for period of Jan. 1, 2015 – Dec. 31, 2015.

2.) Lesee agrees to do all maintenance to the fenceline surrounding said property.

3.) Lessor, 100 percent, prohibits the following people: Bill (Clyde) Woodard, Carl Erskin and Joy Erskin from said property for any reason without the "verbal expressed permission" of Lessor.

4.) Lesee agrees that there will be no hunting of any kind on said property.

It shall be agreed upon by signature below that all terms listed above shall be adhered to thoughout the terms of this contract, failure to follow these terms will result in automatic termination of this contract, (with a 30 day notice of termination), without any refund of monies previously paid to date.

Joey Arriola
(Lessor)

Date: 7/6/21

Robbyn Arriola
(Lessor)

Date: 07/06/2011

Eric Kutscherousky
(Lesee)

Date: 7-6-11


PLAINTIFF'S EXHIBIT 6
10-13-14

Solo

APPENDIX C